IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **PATRICK FORKWA**, *et al.*, | * |
| Plaintiffs, | * |
| v. | * |
| | Civil Case No.: PWG-11-3513 |
| **SYMBRAL FOUNDATION FOR COMMUNITY SERVICES,** | * |
| Defendant. | * |

# MEMORANDUM OPINION

This Memorandum Opinion addresses Plaintiffs Patrick Forkwa, Sanjou K. Quanteh, and Douglas Ibong Usoroh's Motion for Partial Summary Judgment, ECF No. 26, and Memorandum in Support, ECF No. 26-1; the Opposition to Plaintiff's Motion for Summary Judgment and Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment that Defendant Symbral Foundation for Community Services ("Symbral") filed, ECF No. 29; and Plaintiffs' Reply to Defendant's Opposition and Opposition to Defendant's Motion, ECF No. 31. Defendant has not filed a reply to Plaintiffs' Opposition, and the time for doing so has passed. *See* Loc. R. 105.2.a. Having reviewed the filings, I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the reasons stated herein, Plaintiffs' Motion is DENIED, and Defendant's Motion is GRANTED in part and DENIED in part.

**I.  BACKGROUND**[1]

Symbral "operate[s] a long-term group home for individuals with intellectual and developmental disabilities," where Plaintiffs worked.  2d Am. Compl. ¶ 2, ECF No. 13. Specifically, Forkwa worked from December 17, 2008 until late October 2011; Quanteh worked from mid-December 2009 until January or February 2011; and Usoroh worked from June 25, 2000 until December 27, 2011.  *Id*. ¶¶ 5, 8 & 12; Usoroh Payroll Records 49, Def.'s Mem. Ex. 14, ECF No. 30-13 (timecard show Usoroh's hours worked from Dec. 16, 2011 through Dec. 27, 2011); Def.'s Mem. 5–6 & 12 (alleging that Usoroh's employment ended in February 2011). Each worked "as a Relief Counselor and his primary job duty was to care for intellectually handicapped patients who lived at Defendant's group homes."  2d Am. Compl. ¶¶ 5, 8 & 12. Plaintiffs allege that Defendant did not pay them "for time that [they] spent attending mandatory training sessions," including not paying them for their overtime work "at one and one-half times (1.5x) their regular hourly rate."  *Id*. ¶¶ 6, 9–10, 13 & 15–16.  Additionally, they claim that "Defendant deducted at least two (2) hours of unpaid break time per week from [Plaintiffs'] hourly compensation," even though Plaintiffs were "not permitted to take any breaks from [their] job duties," such that "Defendant failed and refused to pay [Plaintiffs] for at least two (2) hours of work per week."  *Id*. ¶¶ 7, 11, 14 & 17.  According to Plaintiffs, Symbral did not pay them "for leave (vacation) time to which [they were] entitled."  *Id*. ¶¶ 20–22.

---

[1] In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004).  When considering cross-motions for summary judgment, the court must consider "each motion . . . individually" and view "the facts relevant to each . . . in the light most favorable to the nonmovant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir.2003).

Plaintiffs allege violations of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 - 219, the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann, Lab. & Empl. §§ 3-501 – 3-509, and the Maryland Wage and Hour Law ("MWHL"), Lab. & Empl. §§ 3-401 – 3-431. Specifically, they claim that Defendant failed to pay them minimum wage because Defendant required that they attend training sessions but did not pay them, and Defendant deducted for breaks that Plaintiffs were not allowed to take, in violation of 29 U.S.C. § 206(a)(1) (Count I), Empl. Law § 3-505 (Count III), and Empl. Law § 3-413 (Count V). Plaintiffs also allege that Defendant failed to pay them at the required rate for overtime work, in violation of 29 U.S.C. § 207(a)(1) (Count II) and Empl. Law §§ 3-415 & 3-420 (Count IV[2]). In Count VI, Plaintiffs allege that Defendant violated Empl. Law § 3-505 of the MWPCL by "fail[ing] and refus[ing] to pay Plaintiffs for their accrued leave." Compl. ¶ 52.

In Plaintiffs' Motion for Partial Summary Judgment, they seek summary judgment as to liability only; they do not "move[] for summary judgment as to (1) the amount of damages, (2) a finding of willfulness under the FLSA, or (3) an award of additional statutory damages under the MWPCL." Pls.' Mem. 3. Defendant opposes Plaintiffs' motion and move to dismiss or for summary judgment on all counts. Def.'s Mem. 4.

## II. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant styles its motion as a "Motion to Dismiss, or Alternatively, for Summary Judgment." Defendant moves to dismiss because "Plaintiffs have failed to establish that they are covered employees under the Fair Labor Standards Act." Def.'s Mem. 4. Defendant argues that Plaintiffs "worked for Defendant only in Washington D.C.," and Defendant "is not a 'not-for-profit business formed under the laws of the State of Maryland," but rather "a not for profit

---

[2] Count IV is mislabeled as Count VI in Plaintiffs' Second Amended Complaint.

3

organization formed under the laws of Washington D.C." *Id*. at 5. This appears to be an argument that this Court lacks subject matter jurisdiction or personal jurisdiction or that venue is improper. *See* Fed. R. Civ. P. 12(b)(1)–(3), (h)(3). To the extent that Defendant moves to dismiss for lack of personal jurisdiction or improper venue, the Court notes that, having filed an Answer, ECF No. 14, prior to filing its motion to dismiss, Defendant has waived those grounds. *See* Fed. R. Civ. P. 12(b), (h)(1).

When a defendant asserts that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," as Defendant does here, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at *4 (D. Md. July 24, 2013). Thus, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *see In re KBR, Inc., Burn Pit Litig.*, No. RWT 09md2083, ---- F. Supp. 2d ----, 2013 WL 709826, at *5 (D. Md. Feb. 27, 2013) (quoting *Kerns*). This Court must act "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted).

A defendant-employer must be subject to the FLSA for the Court to have subject matter jurisdiction over an FLSA claim brought by its employee. *Aguilar v. LR Coin Laundromat, Inc.*, No. RDB-11-2352, 2012 WL 1569552, at *4 n.1 (D. Md. May 2, 2012). "'[A]n employer is subject to the FLSA if one of two pre-requisites is satisfied: (1) an employee is engaged in commerce or the production of goods for commerce ("covered employee") or (2) the employer is

an enterprise engaged in commerce or in the production of goods ("enterprise coverage").'" *Id.* at *4 (quoting *Diaz v. HBT, Inc.*, No. RWT-11-1856, 2012 WL 294749, at *2 (D. Md. Jan. 31, 2012). One way enterprise coverage exists is if the employer "is engaged in the operation of . . . an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution." 29 U.S.C. § 203(s)(1)(C).

Plaintiff claims, and Defendant admits, that "Defendant is in the business of operating a long-term group home for individuals with intellectual and developmental disabilities," and "Defendant was Plaintiffs' 'employer' for purposes of the FLSA, the MWPCL and the MWHL." 2d Am. Compl. ¶ 2; *see* Answer ¶ 2. To establish jurisdiction, Plaintiff claims that "Plaintiffs were individual employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. §§ 206-207," and "Defendant qualified as an 'enterprise' within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r))" and "was engaged in commerce or in the production of goods for commerce within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. § 203(s)(1))." 2d Am. Compl. ¶ 3. Defendant admits these allegations. Answer ¶ 3. Therefore, Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED because the Court is satisfied that Plaintiffs have pleaded subject matter jurisdiction sufficiently. *See Kerns*, 585 F.3d at 192; *Aguilar*, 2012 WL 1569552, at *4 & n.1.

### III. SUMMARY JUDGMENT

#### A. Standard

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, No. 12-1722, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

### B. Minimum Wage under the FLSA and MWHL[3] (Counts I and V)

An employer subject to the FLSA must pay wages of at least $7.25 per hour. 29 U.S.C. § 206(a)(1). But, "'[the] FLSA does not guarantee that employees are paid for every hour of work.'" *Enriquez v. Westminster Wholesale Nurseries, LLC*, No. CCB-12-3810, 2013 WL 4516784, at *2 (D. Md. Aug. 22, 2013) (quoting *Avery v. Chariots for Hire,* 748 F. Supp. 2d 492, 501 (D. Md. 2010) (citing *Blankenship v. Thurston Motor Lines,* 415 F.2d 1193 (4th Cir. 1969))). Rather, wages are sufficient if the "'average hourly wage,'" calculated by dividing "'the total wage paid to [an employee] during any given week . . . by the total time he worked that week,'" is greater than $7.25 for each week of employment. *Id.* (quoting *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960)).

---

[3] "The MWHL is Maryland's 'equivalent of the FLSA,' *Khalil v. Subway at Arundel Mills Office Park, Inc.*, No. CCB–09–158, 2011 WL 231793, at *2 (D. Md. Jan. 24, 2011), and FLSA analysis 'applies equally' to the MWHL, *Goode v. American Veterans, Inc.*, 874 F. Supp. 2d 430, 444 n. 10 (D. Md. 2012)." *Caseres v. S & R Mgmt. Co., LLC*, No. AW-12-1358, 2013 WL 4010894, at *5 (D. Md. Aug. 5, 2013). Therefore, I will analyze the FLSA and MWHL claims together.

Plaintiffs allege that they were not compensated for attending mandatory training sessions or working during break time, such that they were not paid minimum wage. 2d Am. Compl. ¶¶ 27–28 & 47–48. They argue that summary judgment in their favor is appropriate because "Defendant cannot provide any evidence, whether documentary or otherwise, that indicates in any way that it compensated Plaintiffs for time spent in mandatory training sessions," and "Defendant admits that it automatically deducted lunch breaks from the Plaintiffs' paychecks, without regard to whether a lunch break was actually taken." Pls.' Mem. 9 & 13 (citation omitted). Additionally, Plaintiffs contend that they never took breaks, they were not allowed to take breaks, and it was management's responsibility to determine whether Plaintiffs took breaks before deducting from their wages. *Id.* at 8 & 13.

Defendant counters that summary judgment in its favor, not Plaintiffs' favor, is appropriate because Plaintiffs did not report the hours they spent in training on their timecards or inform Defendant that they were working during their breaks, such that Defendant was not required to compensate them for that time. Def.'s Mem. 13-14 & 16. Also, Defendant maintains that Plaintiffs could take breaks because "[t]hey supervised individuals that did not require twenty four (24) hour care," and indeed they were required to take breaks and "signed in their timecard[s] that they took breaks." *Id.* at 7 & 12.

It is undisputed that Symbral did not pay Plaintiffs for break time. *See* Def.'s Mem. 18; Pls.' Mem. 8. But, a genuine dispute exists as to whether Plaintiffs worked during break time. Defendant offers evidence that Plaintiffs only worked with individuals who did not require constant supervision, such that they could have taken breaks. *See* Rhonda Seegobin Aff. ¶ 10, Def.'s Mem. Ex. 22, ECF No. 30-22; *see also* Symbral's Policies and Procedures Manual ("Manual") 18, ¶ 1.a, Pls.' Mem. Ex. F, ECF No. 26-9 (stating that twenty-four hour care, while

the norm, is not required for all individuals). Plaintiffs offer evidence that they could not take breaks because they cared for individuals who required twenty-four hour supervision. *See* Quanteh Aff. ¶ 6, Pls.' Reply Ex. U, ECF No. 31-10; Forkwa Aff. ¶ 7, Pls.' Reply Ex. V, ECF No. 31-11. The sampling of timecards does not clarify the frequency with which Plaintiffs worked during break time, if at all. *See* Timecards, Pls.' Reply Ex. O, ECF No. 31-4; *see also, e.g.*, Def.'s Mem. Exs. 6, 12–14, ECF Nos. 30-6 & 30-12 – 30-14 (additional timecards). Thus, Plaintiffs may have worked during some, all, or none of their breaks.

A genuine dispute also exists as to whether Defendant compensated Plaintiffs for training. Defendant has produced evidence that it was Plaintiffs' responsibility to indicate the hours spent in training on their time cards and that, if Plaintiffs included training hours on their timecards, Defendant paid them for those hours. Oluwagbemiga Adedoyin Olubuse-Omisore[4] Dep. 23:8-14 & 33:14 – 35:11, Pls.' Mem. Ex. E, ECF No. 26-8. The timecards, however, only indicate the hours worked, not how those hours were spent. *See* Timecards. The paystubs, likewise, do not indicate whether hours worked were spent in client care or training. Paystubs, Pl.'s Reply Ex. Q, ECF No. 31-6. Plaintiffs have produced evidence that Symbral did not pay them for attending training sessions. Forkwa's Answers to Interrogs. 1–3, Pl.'s Mem. Ex. J, ECF No. 26-13; Quanteh's Answers to Interrogs. 1–3, Pl.'s Mem. Ex. K, ECF No. 26-14; Usoroh's Answers to Interrogs. 1–3, Pl.'s Mem. Ex. L, ECF No. 26-15. A reasonable jury could believe either side's testimonial evidence. Thus, Plaintiffs may or may not have received compensation for attending training sessions.

---

[4] Olubuse-Omisore worked in payroll for Symbral. See Def.'s Answers to Interrogs. 3, Pl.'s Mem. Ex. G, ECF No. 26-10.

More significantly, there is a genuine dispute of material fact as to whether each Plaintiff's weekly wages, divided by the number of hours he worked in a given workweek, at least equaled minimum wage. The evidence before me includes sample paystubs; sample timecards; Plaintiffs' Answers to Interrogatories, showing the number of hours of training each Plaintiff attended and stating their wages, Forkwa's Answers to Interrogs. 1–3; Quanteh's Answers to Interrogs. 1–3; Usoroh's Answers to Interrogs. 1–3; and Defendant's CFO Leon Mohammed's deposition, in which he testified that direct support staff earn "10, 11, 12 . . . [h]ourly," Mohammed Dep. 29:13–17, Pl.'s Mem. Ex. B, ECF No. 26-5. Notably, it is undisputed that each Plaintiff made more than minimal wage. *See* Forkwa's Answers to Interrogs. 1–3; Quanteh's Answers to Interrogs. 1–3; Usoroh's Answers to Interrogs. 1–3; Mohammed Dep. 29:13–17. Consequently, depending on the number of purportedly unpaid hours they worked—while in training, while not taking their breaks, or otherwise—, each still may have earned an average wage equivalent to or greater than the minimum wage.[5] Because I cannot determine on the record me how many paid and unpaid hours each Plaintiff worked each week and how much he earned that week, summary judgment is not appropriate as to these claims. Both parties' motions shall be denied as to Counts I and V.

### C. Minimum Wage under the MWPCL (Count III)

Plaintiffs claim that Defendant violated the MWPCL, specifically Empl. Law § 3-505, when Defendant failed to pay Plaintiffs for (1) "the time Plaintiffs spent attending training sessions which were required by employer," (2) "unpaid break time which Plaintiffs never took

---

[5] For example, if an employee were paid $10 per hour for forty hours of work one week, he would earn $400. At minimum wage, with overtime pay in accordance with 29 U.S.C. § 207(a)(2) ($7.25 per hour for up to forty hours and $10.88 for each hour over forty), he would have to work more than fifty hours to earn $400 ($7.25 x 40 + $10.88 x 10 = $398.80). Therefore, after working forty hours at $10 per hour, he could work an additional ten hours without compensation and still earn, on average, above minimum wage.

because Plaintiffs were not permitted to take breaks during their shifts," and (3) "hours actually worked which were arbitrarily deducted from their paychecks." 2d Am. Compl. ¶¶ 36–39. While these allegations may lead to Defendant's liability under the FLSA and/or the MWHL, as discussed above, they do not state a cause of action under the MWPCL. *See Andrews v. Comcast Cable Commc'ns Mgmt., LLC*, No. WMN-12-2909, 2013 WL 3322337, at *2 (D. Md. June 28, 2013).

It is true that "the MWPCL provides a private cause of action to an employee to recover from an employer unpaid wages" if the employer violated Empl. Law § 3-505, which "requires the employer to pay a terminated employee any wages due within the regular pay period." *Andrews*, 2013 WL 3322337, at *2. Yet, the MWPCL "does not concern the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo v. Frankel*, 819 A.2d 354, 362 (Md. 2003) (quoted in *Andrews*, 2013 WL 3322337, at *2). Indeed, "while the MWPCL provides a cause of action for wages unlawfully withheld, it is the MWHL that provides a cause of action for the entitlement of wages owed to an employee." *Andrews*, 2013 WL 3322337, at *2 (quoting *Friolo*, 819 A.2d at 361-62). In *Andrews*, 2013 WL 3322337, at *2, this Court observed:

> [I]n *McLaughlin v. Murphy*, this Court dismissed Plaintiff's MWPCL claim, because he did not allege that his employer "failed to pay him regularly, but that it failed to pay him enough; and he [did] not allege that [his employer] failed to pay him minimum wage and overtime due him upon his termination, but that it failed to pay him these wages at all." 372 F. Supp. 2d 465, 475 (D. Md. 2004). Similarly, in *Butler [v. Directsat USA, LLC]*, this Court held that the plaintiffs failed to state a cause of action under the MWPCL because they "[did] not allege that Defendants failed to pay them on a regular basis or that they were not paid upon termination." 800 F. Supp. 2d [662, 670 (D. Md. 2011)]. Rather, the plaintiffs' allegations focused on their entitlement to wages and thus was outside of the scope of the Act. *Id*. at 671; *see also, Guevara v. Clean & Polish, Inc.*, No. 12–2944, 2013 WL 1856357, at *2–3 (D. Md. May 1, 2013) (holding that allegations that focus on the underlying claim of entitlement to wages rather than the timing of payments will be dismissed); *Jones v. Nucletron Corp.*, No. 11–

02953, 2013 WL 663304, at *3 (D .Md. Feb. 20, 2013) (same); *Calle v. Chul Sun Kang Or*, No. 11–0716, 2012 WL 163235, at *4 (D. Md. Jan. 18, 2012) (same); *Fisher v. Rite Aid Corp.*, No. 09–1909, 2010 WL 2332101, at *2 (D. Md. June 8, 2010) (same).

The court dismissed the plaintiffs' MWPCL claim, reasoning that "Plaintiffs' dispute focuses on the entitlement of unpaid wages rather than the Defendant's wrongful withholding of wages," such that it was not covered by the MWPCL. *Andrews*, 2013 WL 3322337, at *3–4.

Here, in their claim for minimum wages under the MWPCL, Plaintiffs do not allege that Defendant did not pay their wages regularly or that Defendant failed "to pay all that is due following termination of the employment." *Friolo*, 819 A.2d at 362. Rather, they "focus[] on their entitlement to wages," *Butler*, 800 F. Supp. 2d at 671, and allege that Defendant "failed to pay [them] enough," specifically by failing to pay them minimum wage "at all." *McLaughlin*, 372 F. Supp. 2d at 475. Therefore, Plaintiffs have failed to state a claim in Count III, their motion for summary judgment on this claim is denied, and Defendant is entitled to summary judgment on Count III.

### D. Overtime under the FLSA and the MWHL (Counts II and IV)

Employers subject to the FLSA must pay their employees "overtime pay at a rate not less than one and one-half times the regular rate at which he is employed if the employee works in excess of 40 hours in a workweek." *Caseres v. S & R Mgmt. Co., LLC*, No. AW-12-1358, 2013 WL 4010894, at *3 (D. Md. Aug. 5, 2013) (citing 29 U.S.C. § 207(a)(2)). An employer is "liable for overtime wages under the FLSA" if it has "'knowledge, either actual or constructive, of [that] overtime work.'" *Id.* (quoting *Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996) (citation and quotation marks omitted)).

Plaintiffs argue that summary judgment is appropriate as to their claims for overtime because they purportedly worked during their lunch breaks without pay and attended mandatory training sessions, such that they worked in excess of forty hours per week, and "Defendant cannot provide any evidence that it compensated the Plaintiffs for attending any of the numerous training courses during Plaintiffs' employment." *See* Pls.' Mem. 6–7. Additionally, in their Reply, Plaintiffs allege that Defendant "arbitrarily deducted overtime pay" other than for "break time and training time." Pls.' Reply 17. They state that the sample paystubs they attach as Exhibit Q show that Usoroh worked in excess of forty hours per week but was not paid time and a half for all hours worked in excess of forty hours. Pls.' Reply 17–18.

Defendant argues that "on all occasions [Symbral] paid Plaintiffs for over time [*sic*] as captured by Plaintiffs in their timecard[s]." Def.'s Mem. 10. In support, Defendant submits 142 pages of timecards, paystubs, and payroll register documents for Plaintiffs, Payroll Documents, Def.'s Mem. Ex. 18, ECF No. 30-17, which Plaintiff contends are inadmissible, Pl.'s Reply 8–9.

Regardless of their admissibility, the timecards, payroll register documents, and paystubs in Defendant's Exhibit 18 do not establish that Plaintiffs were paid time and a half for all overtime hours they worked. Nor do they, or Usoroh's paystubs in Plaintiffs' Exhibit Q, establish that Plaintiffs worked overtime without compensation. Having sifted through the handwritten, often illegible timecards; the considerably redacted payroll register documents; and the paystubs, I have reached a limited number of conclusions. First, Symbral paid Plaintiffs twice per month, such that their timecards and their paystubs captured the hours they worked and the pay they received for fifteen days (the first through the fifteenth of the month or the sixteenth through the thirtieth of the month) or sixteen days (the sixteenth through the thirty-first of the

month).[6] Second, Plaintiffs each often worked in excess of eighty hours during a pay period. Third, Plaintiffs often were paid regular wages for more than eighty hours in a pay period. Fourth, Plaintiffs were paid for some overtime work. Fifth, because the pay periods covered more than two weeks, I cannot say with certainty that any Plaintiff worked in excess of forty hours in a workweek without receiving overtime pay for those hours.[7] For example, a plaintiff may have worked 104 hours in a pay period, which at first blush appears to merit overtime, but those 104 hours could have been distributed such that he worked forty hours one workweek, forty hours the next workweek, and twenty-four hours (two 12-hour shifts) in the beginning of the third workweek, the remainder of which was paid in the next paycheck. Thus, because I cannot conclude on the record currently before me that Plaintiffs worked overtime without proper compensation, or that they were compensated properly for any overtime they worked, summary judgment is not appropriate as to Counts II and IV.

### E. Vacation Time under the MWPCL (Count VI)

The section of the MWPCL covering "payment upon cessation," Lab. & Empl. Law § 3-505, provides:

> (a) Except as provided in subsection (b) of this section, each employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated.
>
> (b) An employer is not required to pay accrued leave to an employee if:
>
>> (1) the employer has a written policy that limits the compensation of accrued leave to employees;

---

[6] The one timecard showing a fourteen-day period, Usoroh's timecard for February 16 through February 28, 2011, shows that Usoroh worked seventy-five hours during that period. Payroll Documents 105.

[7] Usoroh testified that he worked more than forty hours in some work weeks. Usoroh Dep. 11:12-20, Def.'s Mem. Ex. 3, ECF No. 30-3. But, he did not testify that he was not paid for his overtime on those weeks.

13

(2) the employer notified the employee of the employer's leave benefits in accordance with § 3-504(a)(1) of this subtitle; and

(3) the employee is not entitled to payment for accrued leave at termination under the terms of the employer's written policy.

Plaintiffs assert that summary judgment in their favor is appropriate on their claim that Defendant is liable for failing to pay Plaintiffs for accrued vacation time upon termination because they each accrued ten vacation days per year and could redeem up to fifteen days each upon termination, yet "Defendant cannot demonstrate that it paid each of the Plaintiff[]s for ten (10) [days] of vacation per calendar year, or that they paid each of the employees their accumulated vacation pay upon each Plaintiff's departure from the company." Pls.' Mem. 12. Defendant counters that summary judgment in its favor, not Plaintiffs' favor, is appropriate because Forkwa and Usoroh were compensated fully for vacation time to which they were entitled before their employment ended, and all Plaintiffs "abandoned" their positions, such that Defendant was not obligated to compensate them for vacation time under the terms of the Manual. Def.'s Mem. 5–7, 11–12. Plaintiffs argue that "[n]owhere in the employee handbook, or anywhere else, does it state that vacation time that was earned over time during the employee's employment will be forfeited." Pls.' Reply 13.

In short, it is undisputed that Defendant did not compensate Plaintiffs for accrued vacation time when their employment ended, but Defendant contends that it was not obligated to pay them for the accrued time, while Plaintiffs insist that it was. The Manual provides:

**a. Resignation**

Contracted employees may elect to resign at any time without penalty under the following conditions: A letter of resignation must be given by the employee to the Director at least two (2) weeks in advance of the end date, except under special circumstances subject to the Director's approval. At the time of resignation, all leave time used by the employee in excess of accumulated leave time (calculated at .83 day per contract month) [s]hall be computed in hourly wages . . . and deducted from the employee's final check. *Annual leave earned*

> *and accumulated at the time of resignation shall be reimbursed, to a total of 15 days providing a two (2) weeks notice was submitted and honored.*

Manual 14 (emphasis added). Mohammed testified that Symbral also compensated employees for accumulated vacation time if they were terminated. Mohammed Dep. 54:4–6. Based on this uncontradicted evidence, Defendant had to compensate Plaintiffs for accrued vacation time if they were terminated and, if Plaintiffs resigned, Defendant only had to compensate them for accrued vacation time if they first gave two weeks notice.

According to Plaintiffs, "Quanteh wrote Symbral a letter of resignation and gave two weeks notice before he left Symbral." Pls.' Reply 7. In support, they provide an affidavit from Quanteh, stating that he "did not abandon [his] position with Symbral Foundation," but rather "wrote Symbral a resignation letter which gave Symbral two weeks notice and [he] even trained new employees on the job before [he] left so that they could take over [his] position and Symbral was aware of this." Quanteh Aff. ¶ 3. To negate that evidence, Defendant attaches the affidavit of CEO Rhonda Seegobin, in which she stated that "Plaintiff Quanteh abandoned his employment with Defendant and despite several calls to inquire about his return to work, he neither accepted [her] calls nor returned [her] calls." Seegobin Aff. ¶ 13, Def.'s Mem. Ex. 22, ECF No. 30-22. Thus, there is a genuine dispute as to whether Quanteh gave two weeks notice or not, and summary judgment is not appropriate on Quanteh's claim for vacation time compensation.

With regard to Forkwa, Plaintiffs argue that he "did not abandon his position," but rather "Defendant suspended Plaintiff Forkwa and then did not place him back on the schedule." Pls.' Reply 6; *see* Forkwa Aff. ¶ 3 (same). Forkwa stated that he "called Symbral multiple times and even went to CFO Leon Mohammed's office on more than one occasion but Symbral refused to give him [his] schedule back." Forkwa Aff. ¶ 3. Yet, Defendant provides evidence that

15

"Plaintiff Forkwa abandoned his employment with Defendant and despite several calls to inquire about his return to Symbral, he neither accepted nor returned the calls of [Seegobin] and his direct supervisor." Seegobin Aff. ¶ 12. Therefore, a genuine dispute exists as to whether Forkwa abandoned his position or was terminated, and summary judgment is not appropriate on Forkwa's claim for vacation time compensation.

As for Usoroh, he purportedly "created a serious safety risk to individuals in the house and others in adjoining houses" by "almost set[ting] a home with residents on fire on three separate occasions," and was "unable to maintain coherence on a consistent basis," Defendant required Usoroh "to obtain a doctor's note that he was capable of performing the task assigned to him." Def.'s Mem. 6–7. According to Defendant, Usoroh "forfeited all vacation when he failed to obtain medical clearance and abandoned his post on February 27, 2011." *Id.* at 11. In Plaintiffs' view, "[f]ailing to obtain some kind of medical clearance . . . would not constitute job abandonment." Pls.' Reply 12. Also, Plaintiffs contend that Usoroh could not have "abandoned his post on February 27, 2011," because "Defendant's exhibit [14, Usoroh's payroll records] indicate[s] that Plaintiff Usoroh worked for Defendant as late as December 2011." *Id.*; *see* Usoroh Payroll Records 49 (timecard show Usoroh's hours worked from Dec. 16, 2011 through Dec. 27, 2011). Once again, the circumstances of the end of Usoroh's employment are unclear, and a genuine dispute exists as to whether Usoroh resigned voluntarily or was terminated. Summary judgment is not appropriate as to Usoroh's claim for vacation time compensation. Therefore, the parties' motions for summary judgment are denied as to Count VI.

### F. Liquidated Damages

Plaintiffs also contend that I should grant them summary judgment on their claim for liquidated damages because "liquidated damages 'are the norm' for violations of the FLSA,"

unless the employer acted in good faith and on reasonable grounds, which Defendant cannot show, and "the determination of the award for liquidated damages is a question for the Judge and is not proper for jury consideration," Pls.' Mem. 9–10. Because Plaintiffs are not entitled to summary judgment as to any count in their Second Amended Complaint, I will not grant them summary judgment on their claim for liquidated damages.

## IV. CONCLUSION

In sum, Plaintiffs' Motion is DENIED, and Defendant's Motion is DENIED in part as to Counts I, II, IV, V, and VI and GRANTED in part as to Count III. Count III is DISMISSED.

A separate order shall issue.

Dated: September 3, 2013                                   /S/
                                                    Paul W. Grimm
                                                    United States District Judge

lyb